IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JULIAN BARRAZA,<br><br>    Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant.<br>_____/ | No. CIV S-09-1050-CMK<br><br><br><u>MEMORANDUM OPINION AND ORDER</u> |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 27) and defendant's cross-motion for summary judgment (Doc. 29). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

## I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on February 2, 2006, alleging an onset of disability on January 27, 2006, due to glaucoma and diabetes. (Certified administrative record ("CAR") 60-63, 79-85, 92-94). Plaintiff also claims disability based on impairments due to anxiety, ulcer and back pain. (CAR 110-11, 134-40, 180-85). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on August 5, 2008, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In a November 6, 2008 decision, the ALJ concluded that plaintiff is not disabled[2] based

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

on the following findings:

1. The claimant met the insured status requirements of the Social Security Act though December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since January 27, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: congenital hereditary glaucoma with high myopia, cataracts and bilateral corneal scarring, status post surgery. (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, except that he has vision limitations that preclude working around scaffolds, ladders, heights and heavy or dangerous machinery and that preclude working in a job that requires depth perception and fine visual acuity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 1, 1958. He is currently 49 years old and he was 47 years old on the alleged disability onset date, which is defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

///

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 27, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(CAR 9-23). After the Appeals Council declined review on February 19, 2009, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

Plaintiff argues the ALJ erred in four ways: (1) the ALJ failed to credit all of plaintiff's severe impairments at step two; (2) the ALJ improperly discounted plaintiff's credibility; (3) the ALJ failed to credit third party statements; and (4) the ALJ erred in utilizing the Grids instead of a vocational expert.

#### A.   SEVERE IMPAIRMENTS

Plaintiff contends the ALJ erred by failing to include all of his severe impairments at step two, including his anxiety, diabetes and obesity.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[3]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.  Indeed, "[t]he mere existence of an impairment is insufficient proof of a

---

[3]  Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

5

disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see also Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although [claimant] clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'").

Here, the ALJ evaluated all of plaintiff's impairments, including glaucoma, diabetes, anxiety, peptic ulcer disease, as well as back, neck and knee pain.[4] The ALJ also addressed plaintiff's obesity. However, he determined none of these impairments had more than a minimal limitations on plaintiff's abilities. With respect to plaintiff's diabetes, ulcer and pain, the ALJ stated:

> In determining whether the claim's diabetes, peptic ulcer disease and chronic pain complaints are severe within the meaning of applicable regulations and rulings, the undersigned has given much consideration to the lack of recurrent objective signs in support of more than minimal limitations in his ability to perform basic physical activities for more than a 12 consecutive month period caused by such problems. With respect to the claimant's chronic pain complaints, the undersigned in unable to find any recurrent positive objective examination signs to support the intensity and persistence of his complaints. A chronological review of the claimant's progress notes of record is conspicuously absent [of] any signs of weakness, motor loss, range of motion loss or other neurological deficit that is not sporadically reported or isolated in the record. The undersigned notes that the claimant has had significant signs of tenderness, however, such signs have responded to such minimal treatment as Ibuprofen. The record shows a complete lack of objective signs just a few months after his motor vehicle accidents.

(CAR 14).

As for plaintiff's diabetes and obesity, the ALJ stated:

> the claimant has consistently complained of symptoms of pain, gastrointestinal upset, and limited mobility with bowel incontinence, but he has not had any corresponding lasting signs of tenderness, range of motion loss, weakness or gait abnormality. Although the undersigned notes that the claimant's weight has steadily increased from 220 pounds in January 2006 to a recent

---

[4] The court notes that plaintiff only contends error in discounting his anxiety/panic attacks, diabetes, and obesity. He does not allege the ALJ erred in finding his other impairments non-severe.

6

high of 278 pounds, the undersigned does not find any increase in objective clinical findings. Accordingly, the undersigned is unable to find that the claimant's obesity has added any significant limitations that have lasted or are expected to last for 12 consecutive months.

(CAR 15).

Finally, addressing plaintiff's panic and anxiety attacks, the ALJ stated:

In determining the severity of the claimant's alleged severe panic attacks and anxiety attacks, the undersigned emphasizes that the claimant has not had any psychiatric hospitalizations or specialized psychological treatment or counseling for his problems. A review of the medical record reveals that the claimant has only received medication management treatment from his primary care physician for his reported panic attacks and anxiety with prescriptions for Paxil and most recently Celexa. The undersigned notes that the progress reports of record reveal that such medications have proven successful in treating his condition to the point that he is able to maintain his activities of daily living.

(CAR 15).

Noting plaintiff's relatively normal mental status examination with Dr. Randhawa, the ALJ also:

notes that the claimant's reports and prior statement concerning [his] ability to maintain [his] activities of daily living are consistent with the opinion and assessments completed by Dr. Randhawa. The claimant has conceded that despite his alleged physical and mental difficulties, the claimant conceded that he continues to help his mother with several household chores, including cleaning, laundry, dishes and shopping. He also indicated that he helps watch over his mother and helps take care of his amputee brother, which suggests that his condition is not as serious as he portends. He also reported that he has increased panic attacks and anxiety when he does not take his medication, which is indicative that his prescribed medications are effective in treating his condition. As noted above, the claimant has also primarily attributed his limitations to his physical based symptoms and not from any underlying mental condition.

Consequently, the undersigned does not find that . . . the claimant's alleged anxiety, panic attacks and depression has significantly limited his ability to understand, remember and carry out simple instructions, to respond appropriately to supervision, coworkers, and usual work situations, or to deal with changes in routine work settings during the period in question. Furthermore, the undersigned finds that the claimant's mental condition has not

7

> resulted in more than mild restrictions in his activities of daily living, mild difficulty in social functioning, or mild deficiencies of concentration, persistence, or pace. He also has not experienced an episode of decompensation or deterioration in a work or work-like setting. His alleged mental impairments are therefore not severe within the meaning of the applicable rulings and regulations.

(CAR 16).

Plaintiff contends the ALJ erred in these determinations in that he failed to consider the combined effect of all of his impairments, regardless of whether each considered separately is considered severe. Defendant counters that the ALJ properly considered the entire record and credited those severe impairments which met the durational requirement and significantly limited plaintiff's ability to perform basic work activities, and properly determined that those which did not meet the requirements were not severe impairments.

In arguing that the ALJ erroneously rejected plaintiff's diabetes, he claims that the medical records indicate he was diagnosed with diabetes as far back as 2001, and that his control of his diabetes was only assessed as "fair." He states that in August 2007, the record reflects diabetic foot care, and that he was assessed with diabetic neuropathy in January 2008. He also experienced episodes of hypoglycemia with shaking and dizziness, and his blood sugar levels fluctuate, requiring that he eat immediately. However, contrary to plaintiff's apparent position, a diagnosis of diabetes alone is insufficient to meet his burden of establishing the existence of a severe impairment. Plaintiff does not point to any significant limitations caused by his diabetes, with the exception of a need to eat at irregular intervals and possibly some attendant dizzy spells when he does not eat regularly. Nor does plaintiff provide any medical opinions to support his contention that his diabetes limits his abilities. His contention that his diabetes is poorly controlled is not supported by the record, as it appears to be poorly controlled mostly when he is non-compliant with his medication. (See e.g., CAR 228, 231-32). As the ALJ found, plaintiff's diabetes does not have more than mild limitation on his ability to perform work activities. This determination is supported by the medical records and medical opinions in the record, and plaintiff does not challenge the medical opinions relied on by the ALJ.

Similarly, in regards to plaintiff's anxiety and panic attacks, the ALJ found plaintiff's anxiety did not cause significant limitations in his abilities. This is supported by plaintiff's relatively normal psychiatric consultative examination. Dr. Randhawa found "[n]o signs or symptoms of obsessive/compulsive disorder and/or any anxiety disorder." (CAR 214). Indeed, Dr. Randhawa found plaintiff capable of performing tasks independently, interacting with others, performing work activities on a consistent basis, maintaining regular attendance, and completing a normal work week. (CAR 215). The ALJ relied on this medical opinion, a decision that is again not challenged by plaintiff.

Finally, plaintiff contends his obesity should have been determined a severe impairment.

In 1999, obesity was removed from the Listing of Impairments.[5] Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work"). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. See Burch, 400 F.3d at 684.

---

[5] Under SSR 02-01p, a person with body mass index ("BMI") of 30 or above is considered obese. BMI is the ratio of an individual's weight in kilograms to the square of height in meters (weight divided by square of height).

As with his discussion of diabetes, plaintiff sets forth several citations where he has been diagnosed as being obese. He notes his weight and BMI in excess of 30. He does not, however, show how his weight exacerbates any of his illnesses. Plaintiff refers to foot pain and spur formation, but fails to show how this is related to his weight or his diabetes, or how he is limited in his abilities. In addition, is there no medical opinion to support his contention that his weight or foot pain causes him any limitations.

To the extent plaintiff claims the ALJ erred in failing to complete a multiple impairment analysis, the undersigned does not agree. The ALJ's determination that plaintiff's diabetes, anxiety and obesity are not severe is supported by substantial evidence. However, in addition to the above discussion, the ALJ also stated the following in determining plaintiff's RFC:

> As discussed above, the undersigned notes that the record is absent any evidence, which indicates that the claimant has any exertional or mental limitations. While the claimant alleges multiple problems with diabetes, frequent panic attacks, gastrointestinal problems, shoulder, neck, back and joint pain, status post multiple accidents and obesity, the undersigned reiterates that the objective medical record does not support any lasting problems with respect to any of these conditions. There have been no recurrent signs of motor loss, weakness, range of motion loss, sensation loss, reflex loss, gait abnormality or even tenderness reported in the record. The claimant also testified and reported to fairly normal daily activities that also indicate no more than minimal limitations.

(CAR 19).

Alternatively, even if the ALJ should have found plaintiff's diabetes, anxiety and/or obesity to be severe impairments, his failure to do so was harmless error since plaintiff "has not set forth, and there is no evidence in the record, of any functional limitations as a result of [his][impairments] that the ALJ failed to consider." Burch v. Barnhart, 400 F.3d 676, 682-84 (9th Cir. 2005); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (citations and internal quotation marks omitted)).

The undersigned finds the ALJ's determination that plaintiff's diabetes, obesity, and anxiety were non-severe limitations is supported by substantial evidence.

### B.   PLAINTIFF'S CREDIBILITY

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell,

11

947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair,

885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Plaintiff argues the ALJ erred in rejecting his testimony regarding the impact of his impairments.  He contends the reasons given for rejecting his testimony - lack of medical support, fairly normal daily activities, and the consultative examiner's failure to diagnose a mental impairment - are inaccurate and unsupported.

The ALJ's reasoning as set forth above relates to plaintiff's testimony.  In addition, the ALJ found plaintiff's fairly normal daily activities include the following:

> He goes for walks, vacuums, cleans, washes dishes and folds laundry.  He regularly attends weekly Sunday Church services and Wednesday Bible study classes.  For a significant period subsequent to his onset date, the claimant took care of his brother and was paid of $13,000 for such services in 2007.  Although the claimant noted that his brother basically took care of himself and that his mother has taken care of him for the past year, the undersigned suspects that the claimant continues to provide some support for his amputee brother and 80 year old mother.

(CAR 19).

Finally, the ALJ stated:

> In reaching this determination as to the claimant's residual functional capacity, the undersigned credited the medical findings, opinions, and diagnostic conclusions of the claimant's treating and examining physicians.  As noted above, the claimant's subjective complaints of disabling pain, fatigue and anxiety related symptoms are unfounded in the objective medical record.  The claimant has also exhibited an ability to maintain a rather benign weekly schedule with weekly Bible study classes and normal activities of daily living that include cleaning, laundry, watching television, running errands, occasional shopping and likely intermittent watching over his brother and mother, that is entirely within the residual functional capacity described above.  The claimant has also been inconsistent in terms of his inability to work and exaggerative in terms of the limiting effects of his symptoms and gives his allegations and subjective complaints very little weight.

(CAR 20).

The court finds the reasons the ALJ gives for rejecting plaintiff's subjective complaints are clear and convincing and supported by substantial evidence.  The ALJ found plaintiff's treatment was conservative and effective, and inconsistencies existed in the record.

13

The ALJ also found his daily activities inconsistent with his alleged limitations. The undersigned notes that the agency physicians reviewing plaintiff's records noted that plaintiff's treating physician found that his complaints of pain are out of proportion to the objective findings, and offered the opinion that his conditions do not qualify for permanent disability. This is supported by the medical records. (CAR 232).

Providing the proper deference to the ALJ's credibility determination, the undersigned finds the ALJ provided proper reasons which are supported by substantial evidence.

### C. THIRD PARTY STATEMENTS

Plaintiff next contends the ALJ erred by not referencing the third party statements of his sister. Defendant counters that the ALJ did reference the third party statements, and any further treatment of them were unnecessary.

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

However, the ALJ need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, he must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the Ninth Circuit held that the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395. In general, where third party statements are consistent with the medical evidence, the ALJ must consider and comment upon it. See Stout v. Comm'r, 454 F.3d 1050, 1053-54 (9th Cir. 2006). However, where the lay

witness testimony is controverted by the medical evidence, the ALJ does not err by ignoring it. See Vincent, 739 F.2d at 1395.

Here, as the defendant notes, the ALJ summarized plaintiff's sister's statements as follows:

> In a third party report, the claimant's sister similarly noted that the claimant had difficulties performing several basic work activities such as lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, seeing, remembering, concentrating, completing tasks and getting along with others (Exhibit 10E). His sister also indicated that the claimant does not do well with stress, noting that she had witnessed the claimant having anxiety attacks due to stressful situations (Exhibit 10E). She did note that the claimant attended church regularly and enjoyed watching television and playing board games with family (Exhibit 10E). She also reported that the claimant tried to help his mother around the house with laundry, shopping and running errands (Exhibit 10E). Despite his vision problems, both the claimant and his sister confirmed that the claimant was able to read the bible regularly and was still able to drive (see Exhibits 9E and 10E).

(CAR 9-10).

The undersigned notes that these lay witnesses statements are similar to plaintiff's statements which the ALJ rejected. The ALJ specifically found plaintiff's "subjective complaints of disabling pain, fatigue and anxiety related symptoms are unfounded in the objective medical record." (CAR 20). While the ALJ did not specifically reject plaintiff's sister's similar statements, it is clear from the record that her statements are controverted by the medical evidence discussed above. As such, the ALJ did not err in failing to provide specific reasons for rejected the testimony.

**D.   USE OF GRIDS**

Finally, plaintiff contends the ALJ erred in utilizing the Medical -Vocational Guidelines due to his non-exertional limitations. He argues the ALJ should have utilized a vocational expert's expertise.

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process

and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[6] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

---

[6] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Plaintiff argues that the ALJ failed to credit all of plaintiff's impairments, failed to credit his testimony, and failed to credit the statements of his sister. All of these arguments have been addressed above, and the undersigned finds no reversible error. In addition, plaintiff argues the ALJ erred in utilizing the Grids as his non-exertional visual limitations (as well as his other non-exertional limitations such as pain, need for frequent rest periods, impaired concentration, and anxiety attacks) were not accurately reflected and required the use of a vocational expert.

The Ninth Circuit has rejected application of the Grids where "a claimant's nonexertional limitations are in themselves enough to limit his range of work." See Polny v. Bowen, 864 F.2d 661, 664 (9th Cir.1988); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir.1988). However, an allegation of non-exertional limitations "does not automatically preclude application of the Grids." Desrosiers v. Sec. of Health & Human Servs., 846 F.2d 573, 577 (9th Cir.1988); see also Razer v. Heckler, 785 F.2d 1426, 1430 (9th Cir.1986). Rather, "[t]he ALJ should first determine if a claimant's non-exertional limitations *significantly* limit the range of work permitted by his exertional limitations." Desrosiers, 846 F.2d at 577 (emphasis added).

Here, the ALJ explicitly determined that plaintiff's condition did not *significantly* limit the range of work permitted by his visual limitations. The ALJ determined plaintiff is capable of performing a full range of work at all exertional levels, except that his visual limitations precludes work around scaffolds, ladders, heights and heavy or dangerous machinery and working in a job that requires depth perception and fine visual acuity. The undersigned has

1  determined the ALJ did not err in assessing plaintiff's limitations.  Therefore, the failure of the
2  ALJ to include plaintiff's other alleged non-exertional limitations in his application of the Grids
3  was not erroneous.
4           Based the above RFC, as well as plaintiff's age, education and work experience,
5  the ALJ properly determined strict application of the Grids was not possible as plaintiff's vision
6  problems would further limit the occupational base.  However, the ALJ found that plaintiff's
7  visual limitations would not *significantly* limit the range of work he was capable of performing.
8  Specifically, the ALJ determined that plaintiff's vision limited his ability to work around
9  scaffolds, ladders, heights and heavy or dangerous machinery, as well as his ability to work in a
10 job requiring depth perception and fine visual acuity.  The ALJ further found, however, that these
11 limitations would not preclude plaintiff from performing many unskilled jobs.  The ALJ then
12 applied the standards set forth in Social Security Ruling 85-15, noting that rule:

> provides that as a general rule, even if a person's visual impairments were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels.  The undersigned finds it evident given his reported continued daily activities of cleaning, vacuuming, shopping, driving, reading and attending weekly Bible study classes, that the claimant's vision limitations do not preclude handling and working with rather large objects.

(CAR 22).

In addition, the ALJ stated:

> At this juncture, the undersigned also recognizes that the medical vocational analyst reviewed the claimant's vision problems in relation to his vocational profile and found several light and unskilled jobs that he could do despite his visual impairments.  Such jobs include scale operator, basket filler and Mexican food maker (see Exhibits 6E and 11E).  The undersigned finds that the medical vocational analyst's opinion is consistent with SSRs 85-15 and 83-10 and the claimant's visual limitations, and gives his opinion substantial weight.

(CAR 22).

         Because the ALJ relied on the Grids only after determining that plaintiff's non-
exertional limitations would not *significantly* compromise his ability to perform the jobs in his

18

skill category, the ALJ's decision is consistent with the standards articulated by the Ninth Circuit in <u>Desrosiers</u>, 846 F.2d 573, and <u>Polny</u>, 864 F.2d 661.  Moreover, there is no evidence in this case to refute the ALJ's assessment regarding the severity of plaintiff's visual limitations.   The ALJ's determination is supported by substantial evidence, and the undersigned finds no error.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 18) is denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 30, 2012

                                                                    **CRAIG M. KELLISON**
                                                                    UNITED STATES MAGISTRATE JUDGE